UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR GASPARD,<br><br>    Plaintiff,<br><br>    v.<br><br>S. HATTON, et al.,<br><br>    Defendants. | Case No. 12-cv-01058-JST (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 51 |

Plaintiff, a California prisoner proceeding pro se and currently incarcerated at California State Prison–Los Angeles County ("CSP–LAC"), filed the instant civil rights action under 42 U.S.C. § 1983 alleging violation of his constitutional rights while incarcerated at Salinas Valley State Prison ("SVSP"). Specifically, plaintiff alleges that defendants, knowing that plaintiff was vulnerable to attack, terminated his single-cell status and placed plaintiff in a cell with another inmate who subsequently raped him. The Court screened the complaint pursuant to 28 U.S.C. § 1915A and found plaintiff had stated a cognizable claim for deliberate indifference to his safety in violation of the Eighth Amendment.

Now before the Court is defendants' motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons discussed below, the Court GRANTS the motion.

# FACTUAL BACKGROUND[1]

## I. Plaintiff's Housing History

Plaintiff was housed at California State Prison – Corcoran ("Corcoran") from approximately August 2006 to January 2010. (Maiorino Decl. Ex. A.) On December 9, 2009, Corcoran placed plaintiff on single-cell status after he was the victim of an in-cell assault. (Id.) The December 9, 2009 Committee Report out of Corcoran notes that plaintiff would be "eligible for double cell upon transfer." (Id.)

Plaintiff was transferred to the California Correctional Institution in Tehachapi ("Tehachapi") in January 2010. (Maiorino Decl. Ex. A; Hatton Decl. Exs. A, B.) Plaintiff stayed at Tehachapi until March 2011 when Tehachapi converted into a Segregated Housing Facility. (Id.) Plaintiff maintained his single-cell status at Tehachapi. (Pl. Decl. at 2.) Plaintiff moved to SVSP on March 8, 2011 for non-adverse reasons and was placed in SVSP's Housing Facility B. (Maiorino Decl. Ex. A; Hatton Decl. Exs. A, B.)

## II. March 16, 2011 SVSP Unit Classification Committee Hearing

Plaintiff appeared before the Unit Classification Committee ("UCC") at SVSP on March 16, 2011 for his initial general population review. (Hatton Decl. Ex. A.) Defendant Hatton, then the Facility Captain for Housing Facility B, was the Chairman of the hearing. (Hatton Decl. ¶¶ 2, 5.) Defendants Shaffer and Crosby were Committee Members at the hearing. (Hatton Decl. Ex. A.) Defendant Souza was the Recorder at the hearing. (Id.)

Plaintiff's central file, including the confidential portions, were reviewed. (Id.) At the hearing, it was noted that there were no in-cell issues contained in plaintiff's central file, including the confidential portions, that would preclude plaintiff from receiving a double-cell assignment. (Hatton Decl. ¶ 9 & Ex. A.) The conditions leading to plaintiff's single-cell status no longer existed because plaintiff had been removed from the facility at which the in-cell assault occurred – Corcoran – and he no longer had contact with the cellmate who had attacked him. (Id.)

According to defendants, at the hearing, plaintiff was advised to find a compatible

---

[1] The following facts, unless otherwise noted, are undisputed.

cellmate, and plaintiff indicated that he was in agreement with finding a compatible cellmate and with double-celling. (Hatton Decl. ¶ 10 & Ex. A.) Defendants also assert that "[a]t no time during the UCC hearing did [plaintiff] refuse to be placed on double-cell housing or indicate that he would refuse to accept a cellmate." (Id. ¶ 10.) Plaintiff disputes these assertions and gives the following version of events:

> I tried to explain to all four committee members that my problems with cells [sic] is brought on by complications from being a diabetic for 51 years and that I was classified by medical as being a critical diabetic which ment [sic] that I am subject to hypoglycemia, a part of diabetes that causes "seizures" and "unconsciousness" and this is the reason I was granted single cell status, for deep concerns for my health and safety.

(Pl. Decl. at 2.) According to defendants, however, "[a]t no time during the March 16, 2011 UCC hearing did [plaintiff] raise his medical condition as a factor to prohibit him from double-cell housing." (Hatton Decl. ¶ 11.)

### III. Plaintiff's Cellmate History at SVSP

Plaintiff was not immediately assigned a cellmate at the March 16, 2011 UCC hearing. (Hatton Decl. ¶ 12.) Plaintiff was placed in Cell No. 101 in Facility B from March 8, 2011 to August 25, 2011. (Hatton Decl. Ex. B.) Originally, plaintiff was housed alone in Cell No. 101. (Id.) Plaintiff was assigned Cellmate No. 1 on April 20, 2011 until August 2, 2011. (Id.) Plaintiff remained in Cell No. 101 and was assigned Cellmate No. 2 on August 6, 2011. (Id.) On August 25, 2011, plaintiff and Cellmate No. 2 were moved to Cell No. 120. (Id.) Plaintiff and Cellmate No. 2 remained cellmates until Cellmate No. 2 was removed from Cell No. 120 on September 18, 2011. (Id.) Plaintiff was assigned Cellmate No. 3 on September 18, 2011 and shared the cell with him until October 22, 2011. (Id.) Cellmate No. 3 sexually assaulted plaintiff on October 22, 2011. (Compl. at 3, 4; Dkt. No. 49 at 2.) The sexual assault occurred while plaintiff was unconscious during a hypoglycemic episode. (Compl. at 4.)

Defendants did not personally assign plaintiff any of the three cellmates plaintiff had between April 20, 2011 and October 22, 2011 at SVSP. (Hatton Decl. ¶ 13; Souza Decl. ¶ 10; Shaffer Decl. ¶ 10; Crosby Decl. ¶ 6.) Plaintiff never informed any of the defendants that he feared for his safety from any cellmate or that he believed any cellmate would harm him in any

3

1  manner before the date of the alleged assault. (Hatton Decl. ¶ 4; Souza Decl. ¶ 4; Shaffer Decl.
2  ¶ 4; Crosby Decl. ¶ 5.) Plaintiff never sent any of the defendants a request to change cellmates.
3  (Id.)

### IV. CDCR Policy

Under California Code of Regulations, title 15, it is the expectation that all inmates be placed on double-cell status. Cal. Code Regs. tit. 15, § 3269. Inmates are not entitled to single-cell assignments, housing location of choice, or a cellmate of their choice. (Id.) Single-cell status is considered for inmates who demonstrate a history of in-cell abuse, significant in-cell violence toward a cell partner, verification of predatory behavior toward a cell partner, or who have been victimized in-cell by another inmate. Cal. Code Regs. tit. 15, § 3269(d). Staff is required to consider a pattern of behavior as opposed to a single incident. (Id.)

Double-celling was deemed appropriate for plaintiff because he had no history of in-cell violence toward other cellmates or predatory behavior toward other cellmates. (Hatton Decl. ¶ 10.) Further, as noted above, plaintiff's UCC determined that the reasons for plaintiff's single-cell status, i.e., the in-cell assault at Corcoran, no longer existed because he had been removed from Corcoran and no longer had contact with the cellmate who assaulted him. (Id. ¶ 9.) After reviewing plaintiff's central file, the UCC determined that plaintiff had no enemy concerns at SVSP. (Souza Decl. ¶ 6.) Finally, any cellmate assigned to plaintiff would have been evaluated under prison policy and cleared for double-celling based on a lack of history of in-cell violence associated with any such cellmate. Cal. Code Regs. tit. 15, § 3269(d).

Medically-related housing requirements are documented in a prisoner's central file by medical personnel. (Shaffer Decl. ¶ 12.) In cases where single-cell status is recommended by medical personnel, the central file is documented so that the recommendation can be considered in housing decisions. (Id.) Even where there is such a recommendation, however, policy requires single-cell housing as a temporary short-term measure subject to periodic review. Cal. Code Regs. tit. 15, § 3269(f). There was no medical recommendation for single-cell housing in plaintiff's central file at the time of the March 16, 2011 UCC hearing. (Shaffer Decl. ¶ 12.) Indeed, other than evidence of the prior attack at Corcoran, there was no documentation in plaintiff's central file

4

1    showing him to be vulnerable to attack by another inmate. (Souza Decl. ¶ 6.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility

determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge).[2]

**II.    Analysis**

    **A.    Standard for Eighth Amendment Safety Claims**

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have an affirmative duty to protect inmates from violence at the hands of other inmates. See id. at 833. The failure of a prison official to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the objective component – the deprivation alleged must be sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and (2) the subjective component – the prison official must possess a sufficiently culpable state of mind. See id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. Id. at 834 (citing Wilson, 501 U.S. at 298). With respect to the subjective component, the requisite state of mind depends on the nature of the claim. In prison-

---

[2] Plaintiff has submitted a verified complaint and a sworn declaration with his opposition.

6

conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

A prison official cannot be held liable under the Eighth Amendment for failing to guarantee the safety of a prisoner unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id.

Deliberate indifference describes a more blameworthy state of mind than negligence. See Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104). Negligence, and even gross negligence, are not enough to amount to an Eighth Amendment violation. Farmer, 511 U.S. at 835. Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk. Id. at 836.

**B.     Objective Component**

The Court finds plaintiff's claim fails at the first step – the objective component – because plaintiff has not alleged facts or provided evidence to show a "sufficiently serious" deprivation.[3] Farmer, 511 U.S. at 834. At most, the undisputed facts show that plaintiff was moved from single-cell status to double-cell status on March 16, 2011 and that an in-cell attack occurred over seven months later after plaintiff was housed with three different cellmates. The Supreme Court has held that double-cell housing does not, in and of itself, constitute an Eighth Amendment

---

[3] Obviously, the assault that Plaintiff suffered at the hands of another inmate was serious. The focus of Defendants' motion, however, is whether Defendants' conduct in moving Plaintiff to double-celled status was serious.

7

violation. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). And, as noted, CDCR policy requires that inmates be double-celled absent certain exceptions not applicable here. Cal. Code Regs. tit. 15, § 3269.

While it is true that plaintiff held single-cell status at Corcoran and Tehachapi following a prior in-cell assault, it is undisputed that his single-cell status was temporary. Plaintiff does not dispute that the December 9, 2009 Committee Report out of Corcoran notes that plaintiff would be "eligible for double cell upon transfer." (Mairoino Decl. Ex. A.) And plaintiff does not put forth evidence that he had any enemy concerns at SVSP that would have justified retaining his single-cell status.

On this record, plaintiff fails to demonstrate a disputed issue of fact concerning an objectively, sufficiently serious deprivation. Without a showing to satisfy the objective prong of the deliberate indifference analysis, plaintiff cannot withstand summary judgment on his failure-to-protect claim.

### C. Subjective Component

Even assuming that the first, objective component were met, plaintiff has nevertheless failed to show that any defendant knew of and disregarded an excessive risk to his health or safety. As noted above, there was no medical recommendation for single-cell housing in plaintiff's central file at the time of the March 16, 2011 UCC hearing. (Shaffer Decl. ¶ 12.) Indeed, plaintiff's central file contained no documentation showing him to be vulnerable to attack by another inmate at SVSP. (Souza Decl. ¶ 6.)

Nor do plaintiff's statements to the UCC alter the outcome. Specifically, plaintiff asserts that he told the UCC members about his hypoglycemia and periodic episodes of unconsciousness. Defendants dispute this assertion and maintain that plaintiff never raised his medical condition as a factor to prohibit him from double-cell housing. (Hatton Decl. ¶ 11.) Taking the facts in the light most favorable to plaintiff, it cannot be said that defendants knew of and disregarded a

8

substantial risk to plaintiff's safety. Even accepting plaintiff's version of the facts, defendants were only provided with an ambiguous description of a possible threat. Plaintiff does not specify how his statements to the UCC made clear that he would be assaulted again when placed with any other possible cellmate within SVSP. Further, plaintiff has not raised a triable issue of fact that any of the defendants had reason to know that Cellmate No. 3 posed a particular risk to plaintiff due to the particular characteristics of Cellmate No. 3 or of plaintiff himself. See Harvey v. State of Calif., 82 Fed. Appx 544, 2003 WL 22803485 (9th Cir. 2003) (no evidence that defendant actually knew of a risk of sexual assault – even where plaintiff told defendant that plaintiff was a homosexual and was nervous about being placed with another prisoner – because there was no evidence defendant knew of a particular risk posed by the particular cellmate).

As further noted above, the UCC gave plaintiff an opportunity to find a compatible cellmate. (Id. ¶ 10.) It appears that plaintiff did not select a cellmate in March 2011 and was eventually assigned a cellmate on April 20, 2011. (See Pl. Opp. at 4.) By that time, Hatton was no longer the Facility Captain for Housing Facility B at SVSP. (Hatton Decl. ¶ 2.) By April 2011, Hatton had been promoted to Custody Captain, and therefore no longer had authority over or responsibility for housing issues in Facility B and made no decisions concerning the housing of individual inmates. (Id.) Consequently, before plaintiff was assigned his first cellmate at SVSP and long before plaintiff was assigned the cellmate who assaulted him, Hatton lost authority over plaintiff's housing. Nor did Crosby, Shaffer, or Souza have responsibility for or authority over plaintiff's housing. (Crosby Decl. ¶ 4; Shaffer Decl. ¶ 5; Souza Decl. ¶ 5.)

On the facts adduced, the Court cannot conclude that defendants acted with negligence, let alone the criminal recklessness required to sustain plaintiff's claim. Accordingly, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether defendants acted with deliberate indifference under the subjective prong of Farmer. 511 U.S. at 834.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: November 30, 2013

_____
JON S. TIGAR
United States District Judge